UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTONIO LAY #449238,

                Petitioner,

v.

MELINDA BRAMAN,[1]

                Respondent.

_____/

Case No. 1:18-cv-666

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner
Antonio Lay is incarcerated with the Michigan Department of Corrections (MDOC) at the Richard
A. Handlon Correctional Facility in Ionia, Michigan. Following a jury trial in the Kent County
Circuit Court, Petitioner was convicted of assault with intent to rob, pursuant to Mich. Comp. Laws
§ 750.89; assault with intent to do great bodily harm less than murder, pursuant to Mich. Comp.
Laws § 750.84; being a felon in possession of a weapon, pursuant to Mich. Comp. Laws §
750.224f; and possessing a firearm during the commission of a felony, pursuant to Mich. Comp.
Laws § 750.227b(1). On October 22, 2015, the court sentenced Petitioner as a third-offense
habitual felony offender, Mich. Comp. Laws § 769.11, to concurrent sentences of 35 to 90 years
imprisonment for the assault-with-intent-to-rob-while-armed conviction, eight to 20 years
imprisonment for the assault-with-intent-to-do-great-bodily-harm conviction, four to ten years

---

[1] Because Petitioner has been transferred to the Richard A. Handlon Correctional Facility, Melinda
Braman, the Warden at that facility, is substituted as the Respondent pursuant to Federal Rule of
Civil Procedure 25(d) and the caption amended as set forth above.

imprisonment for the felon-in-possession conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction.

On June 5, 2018, Petitioner timely filed his habeas corpus petition.

The petition raises eight grounds for relief, as follows:

I.      Evidence of a prior felonious assault by [Petitioner] was more prejudicial than probative and thus [Petitioner was] denied his constitutional right to a fair trial.

II.     The testimony of Officer Timothy DeVries concerning the location of [Petitioner's] cell phone was inadmissible under MRE 702 and [Petitioner] as a result was denied his constitutional right to a fair trial.

III.    The trial court erred in failing to include among the jury instructions the standard undisputed accomplice instructions.

IV.     [Petitioner] was denied his state and federal constitutional right to the effective assistance of counsel because trial counsel failed to request the standard undisputed accomplice instructions and failed to object to the cell phone tracking testimony of officer Timothy DeVries.

V.      Where the prosecution's case relied solely on witness testimony, trial counsel's wholesale failure to investigate and wholesale failure to subject the prosecution's case to meaningful adversarial testing by failing to conduct any pretrial investigative interviews of any of the prosecution's witnesses constructively deprived Petition of his Sixth Amendment right to counsel.

VI.     Reversal is required where the trial court instructed the jury that they could "find [Petitioner] guilty" once they decided "the prosecutor has proven each element of those crimes," because the instruction did not convey to the jury that the prosecutor had to prove each element of the crimes beyond a reasonable doubt.

VII.    [Petitioner] was deprived of the right to the effective assistance of counsel when counsel failed to move to exclude a surprise adversarial witness, Steve Schabel, who should have been barred from testifying because he was never endorsed on the prosecution's witness list as a witness intended to be called at trial and regarding whom no motion for leave to add additional witness was ever made or granted, with the resultant prejudice that counsel did not have an opportunity to investigate and interview this witness and was wholly ill-equipped to effectively and meaningfully challenge the witness's damaging testimony.

VIII.    Where identity of the perpetrator was an essential element and a question of fact for the jury to determine, the trial court judge invaded the province of the jury and pierced the veil of judicial impartiality by ordering record confirmation of prosecution witnesses' in-court identification when it is strictly up to the jury to determine who was pointed to and who was identified.

(Pet., ECF No. 1 at PageID.3–4.)

Respondent has filed an answer to the petition (ECF No. 9) stating that the petition should be denied because the grounds are procedurally and lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the petition be denied.

## I.  Factual background

The Michigan Court of Appeals set forth the essential facts of the case as follows:

Late in the evening on November 7, 2014, the victim went to Gardella's bar in downtown Grand Rapids. While there, the victim approached a man, later identified as Tavis Miller, and asked him if he had any cocaine to sell. Miller asked defendant, who said that he did have some in a car.

The victim left Gardella's with Miller and defendant, and they walked over to the car in question. When they got to the car, the victim sat in the backseat,  Miller sat in the front passenger seat, and defendant sat in the driver's seat. The victim started counting his money. Defendant asked Miller to open the glovebox and get him "the stuff." Miller opened the glovebox and saw a gun inside. Miller "froze" when he saw the gun. Defendant reached over to the glovebox and grabbed the gun. Defendant pointed the gun at the victim's face and demanded that the victim hand over his money. The victim opened the car door to escape, and defendant shot him. Defendant then drove off. The victim was able to identify Miller. After police arrested Miller, he identified defendant.

(Mich. Ct. App. Aug. 1, 2017 Op., ECF No. 10-11 at PageID.367.) The trial court sentenced Petitioner as set forth above.

On direct appeal to the Michigan Court of Appeals, Petitioner raised the first four issues in his habeas petition through counsel. (ECF No. 10-11 at PageID.398.) Petitioner later obtained substitute counsel, who filed a supplemental brief raising the last four issues set forth in the habeas

petition. (*Id.* at PageID.450–51.) The court of appeals affirmed Petitioner's convictions in an unpublished opinion issued on August 1, 2017. (*Id.* at PageID.367–76.)

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims he had raised in the court of appeals. (ECF No. 10-12 at PageID.554–56.) By order entered May 1, 2018, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. (Mich. S. Ct. Order, *Id.* at PageID.548.)

Petitioner did not file a petition for writ of certiorari to the United States Supreme Court or file a motion for relief from judgment in the trial court.

## II. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th

Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Analysis

### A.    Evidence of Prior Assault

In his first claim, Petitioner asserts that he was denied a fair trial due to the trial court's admission of testimony that Petitioner previously assaulted his girlfriend's mother with a handgun. On the third day of trial, the prosecution called Patricia Bailey as a witness. Bailey testified that on January 29, 2014, she was at her daughter's apartment, and Petitioner was also present. (ECF No. 10-7 at PageID.295.) Bailey said that, on that occasion, Petitioner punched her, went upstairs and retrieved a black handgun with a clip, and hit her with it twice on her head. (*Id.* at PageID.296.) Bailey had seen Petitioner with the gun twice. When the prosecutor showed Bailey the gun that had been admitted into evidence, she testified that it looked like the gun with which Petitioner hit her. (*Id.*) Petitioner objected to Bailey's testimony on the ground that it was inadmissible under Michigan Rule of Evidence 404(b). The trial court disagreed, concluding that the testimony was relevant and not unduly prejudicial. (ECF No. 10-5 at PageID.193.)

The Michigan Court of Appeals rejected this claim as follows:

Although defendant objected to the admission of Bailey's testimony regarding defendant's previous assault with a handgun that appeared to be [sic] same as the one used in this case on the ground that it was evidence of a prior bad act in violation of MRE 404(b), we find that the evidence was "admissible evidence under MRE 401, without reference to MRE 404(b)." *People v Hall*, 433 Mich 573, 580; 447 NW2d 580 (1989). *See also People v Vandervliet*, 444 Mich 52, 64; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) ("if the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character, Rule 404(b) is not implicated").

MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Here, the prosecution sought to introduce "[e]vidence of...defendant's possession of a weapon of the kind used in the offense with which he is charged[.]" *Hall*, 433 Mich at 580. It sought to do so through Bailey's testimony that defendant assaulted her using a handgun that appeared to be the same gun used in the assault against the victim in this case. The purpose of the testimony was to show defendant's knowing possession and control of a handgun similar to the one used in this case. The testimonial evidence of defendant's possession of the handgun in the assault against Bailey was relevant to make defendant's identity as the gunman in this case "more probable...than it would be without the evidence." MRE 401. "The fact that establishing defendant's possession of the [handgun] also necessarily constitutes evidence of a separate crime, wrong, or act [the assault against Bailey] does not alone bring the proof within the compass of MRE 404 preclusion." *Hall*, 433 Mich at 583. Therefore, the trial court did not abuse its discretion in admitting the evidence, because it was relevant under MRE 401 without reference to 404(b). "Since we find this evidence to be admissible independently of MRE 404(b), we need not address the application of that rule to the facts before us." *Hall*, 433 Mich at 587.

(ECF No. 10-11 at PageID.369–70.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry as to whether evidence was properly admitted or improperly excluded under state law "is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000). Accordingly, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are

the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Further, under the AEDPA, a court may not grant relief if it would have decided the evidentiary question differently. A court may only grant relief if the petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the *specific kind of evidence* at issue"). Petitioner cites Michigan law on the application of Rule 404(b), but he fails to identify any clearly established Supreme Court precedent that would preclude admission of Bailey's testimony, regardless of whether it was covered by Rule 404(b). *See Wagner v. Klee*, 620 F. App'x 375, 378 (6th Cir. 2015) (while Federal Rule of Evidence 404(b) "generally bars a federal prosecutor from asking a defendant about prior bad acts, the Supreme Court has never held that the Constitution forbids a prosecutor from doing so"); *Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (even if the trial court violated Michigan Rule of Evidence 404(b), such "'garden-variety' character-evidence error does not 'cross the constitutional threshold' of due process"). Petitioner has not met this difficult standard and, therefore, is not entitled to habeas relief on this claim.

### B.    Admission of Cellphone Data and Location Expert Testimony

In his second ground, Petitioner argues that the trial court's admission of testimony from Detective Timothy DeVries as an expert in the area of forensic cellular telephone analysis was contrary to Michigan Rule of Evidence 702 and denied Petitioner his constitutional right to a fair trial. Detective DeVries testified that he completed a course in understanding investigative techniques or modern telecommunications taught by the United States Department of Justice and

received additional training in cell phone, call detail, and cell tower analysis. (ECF No. 10-7 at

PageID.316.) Detective DeVries testified that, as part of his investigation, he obtained the Call

Detail Report (CDR) for Petitioner's cell phone, which showed the calls and texts sent from

Petitioner's phone to other numbers. Detective DeVries said that based on his training, he is able

to determine from the information contained in cell phone records the particular cell phone tower

and its location that was used for a particular phone call. (*Id.* at PageID.315–16.) Based on the

CDR, Detective DeVries determined that Petitioner and Tavis Miller communicated several times

on November 7, 2014, and November 8, 2014, both before and after the incident. (*Id.* at

PageID.317.) He further testified that the calls made around the time of the incident used the tower

closest to 68 Commerce—the area where the incident occurred. (*Id.*) In addition, Detective Miller

said that the records showed that calls made from Petitioner's phone after the incident used a tower

located near Petitioner's girlfriend's apartment. (*Id.* at 317–18.)

The court of appeals reviewed the admission of Detective DeVries' testimony only for

plain error because Petitioner failed to object to either the qualification of Detective DeVries as an

expert or the admission of his testimony. (ECF No. 10-11 at PageID.370.) The court rejected the

claim as follows:

> Defendant claims that Detective DeVries's testimony fails the *Daubert* factors, and
> therefore, is unreliable and inadmissible. We disagree. In *Daubert v Merrell Dow
> Pharms, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), the United
> States Supreme Court outlined a nonexhaustive list of factors that the trial courts
> could use to determine the reliability of scientific expert testimony. Michigan has
> codified *Daubert* into its own rule of evidence, MRE 702. The purpose of the rule
> is to require trial judges to act as gatekeepers and exclude unreliable expert
> testimony, in conformance with *Daubert*. *See* MRE 702, staff comments. The court
> rule "incorporates the requirements" of *Daubert*. *People v Unger*, 278 Mich App
> 210, 217; 749 NW2d 272 (2008).
>
> MRE 702 requires that the court ensure that each aspect of an expert witness's
> proffered testimony is reliable. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126;
> 732 NW2d 578 (2007). MRE 702 states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here, Detective DeVries was qualified as an expert in forensic cellular telephone analysis.

Regarding the first requirement of MRE 702, Detective DeVries's testimony was based on sufficient facts or data. Detective DeVries testified that he received defendant's cellular telephone records, including a CDR, from the cellular service provider that defendant used. The CDR included phone numbers, dates, and times for incoming and outgoing phone calls and text messages. It also included the coordinates for which cellular telephone towers handled the calls or texts. These were sufficient facts and data.

Second, Detective DeVries's testimony was the product of reliable principles and methods. Detective DeVries testified that he completed a course in investigative techniques for modern telecommunications through the Department of Justice. He also testified that he had training in cellular telephone analysis and "call detail record" and cellular telephone tower analysis. Detective DeVries testified that, due to his training, he is able to determine a cellular telephone's approximate location at the time a call or text is received or made by using the coordinates of a cellular telephone tower. Detective DeVries testified that every time a call is made, a cellular telephone "reaches out" to the closest tower with the strongest signal, which is then recorded on the CDR.

Defendant relies on a case from a foreign jurisdiction to support his argument that Detective DeVries's testimony was flawed; he cites *United State* [sic] *v Reynolds*, 626 Fed Appx 610, 615 (ED Mich 2015), which states, "While cellphones are designed to connect to the tower with the strongest signal, that tower might not actually be the closest because factors such as weather, obstructions, and network traffic can cause a call to connect to a tower farther away." Even if this case were binding on us, Detective DeVries indicated that calls connect with the "closest tower with the strongest signal. . . ." He also noted that at times of heavy cellular traffic, calls can be bumped. As such, the jury heard Detective DeVries's testimony in appropriate context and no clear error is apparent.

Finally, Detective DeVries applied the principles and methods reliably to the facts of the case. Indeed, Detective DeVries used the coordinates provided on the CDR to determine which towers defendant's cellular telephone used to route calls around the time of the crimes.

It was not plain error affecting defendant's substantial rights for the trial court to admit Detective DeVries's testimony. Defendant was not denied his constitutional right to a fair trial.

(*Id.* at PageID.370–71 (footnote omitted).)

Respondent correctly argues that this claim is procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' at the time at which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Here, Petitioner failed to comply with the state's contemporaneous objection rule (ECF No. 10-11 at PageID.370), "an adequate and independent state ground for foreclosing federal review." *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011). "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted).

11

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Petitioner has not attempted to explain his failure to object during trial. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a petitioner to show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Accordingly, I conclude that Petitioner's evidentiary-error claim is procedurally defaulted.

Aside from procedural default, the claim also lacks merit. As noted above, federal habeas courts do not review state-court evidentiary rulings. *See Burger*, 515 F. App'x at 509 ("Unfortunately for Burger, second-guessing evidentiary rulings is not our job, at least not in this context. Federal habeas courts do not review state-court rulings on state-law questions."). Petitioner must show that the admission of Detective DeVries's testimony violated his constitutional rights. "The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief unless the evidence violates due process or some other federal constitutional right." *Randolph v. Wolfenbarger*, No. 04-CV-73475, 2006 WL 1662885, at *5 (E.D. Mich. June 12, 2006) (citing *Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001); *see also Adesiji v. Minnesota*, 854 F.2d 299, 300 (8th Cir. 1988) (whether expert testimony

regarding general patterns of credibility among children reporting sexual abuse was properly admissible was "essentially a matter of state law"). "Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state law evidentiary issue." *Randolph*, 2006 WL 1662885, at *5 (citing *United States ex. Rel. Ruddock v. Briley*, 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002)). Petitioner fails to show that the state court's determination that Detective DeVries qualified as an expert under Michigan's rules of evidence or that his testimony was reliable violated fundamental fairness.

As the Sixth Circuit has recognized, to obtain habeas relief based on an allegedly improper evidentiary ruling, Petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue." *Winn*, 967 F.3d at 538. In the absence of Supreme Court authority holding that the admission of expert testimony violates the Constitution, laws, or treaties of the United States, Petitioner is not entitled to habeas relief. *See Bugh*, 329 F.3d at 512-13.

## C.    Failure to Give Accomplice Instruction

Petitioner next claims that the trial court's failure to give the standard jury instruction on undisputed accomplice testimony violated his right to due process. In particular, Petitioner claims that the court should have given Michigan Criminal Jury Instruction 5.6 with respect to Tavis Miller's testimony. The instruction provides:

> (1) You should examine an accomplice's testimony closely and be very careful about accepting it.

> (2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

> (3) When you decide whether you believe an accomplice, consider the following:

(a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

(b) Has the accomplice been offered a reward or been promised anything that might lead [him/her] to give false testimony? [*State what the evidence has shown. Enumerate or define reward.*]

(c) Has the accomplice been promised that [he/she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

[(d) Does the accomplice have a criminal record?]

(4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

(ECF No. 10-11 at PageID.371–72.)

The court of appeals reviewed the issue for plain error because Petitioner failed to preserve it for review. (*Id.* at PageID. 371.) It noted that pursuant to Mich. Comp. Laws § 768.29, the trial court was not required to give the accomplice testimony instruction because neither party requested it. (*Id.* at PageID.372.) The court of appeals further found the trial court did not err in failing to give the instruction *sua sponte*:

"[R]eversal [is] not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through defense counsel's cross-examination of the alleged accomplice." *Young*, 472 Mich at 139. Here, defense counsel demonstrated Miller's potential credibility problems through cross-examination and recross-examination. Through cross-examination and recross-examination, the jury was made aware that Miller was an accomplice to the crime and that, due to his status and the benefits offered to him by the prosecution, his testimony may not be credible.

Further, while instructing the jury, the court stated,

You have heard testimony from a witness, Tavis Miller. That witness made made [sic] an agreement with the prosecutor about charges against him in exchange for his testimony at this trial. You are to consider this evidence only as it relates to his credibility, as it may tend to show the witness' bias or self interest.

14

Under all the circumstances, it was not an abuse of discretion, nor was it plain error affecting defendant's substantial rights, for the trial court to refrain from giving the standard jury instruction on undisputed accomplice testimony.

Even assuming that there was error, the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *See Carines*,  460 Mich at 763-764. Defense counsel vigorously cross-examined and recross-examined Miller. The examinations revealed potential credibility issues, which the  jury had the ability to take into consideration while deliberating. Moreover, the trial court did generally instruct the jury regarding Miller's agreement to testify for the prosecution. No information was hidden or kept from the jury. Therefore, any alleged error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

(*Id.* at PageID.372–73.)

Respondent argues that this claim is procedurally defaulted. *See Scott v. Elo*, 302 F.3d 598, 605 (6th Cir. 2002) (noting that the petitioner's failure to request an involuntary manslaughter instruction was procedurally defaulted absent a showing of cause and prejudice or that the denial of relief would result in a fundamental miscarriage of justice). Petitioner contends that his ineffective assistance of counsel claim in ground IV establishes the requisite cause and prejudice. (ECF No. 14 at PageID.772.)

Even assuming that the claim is not procedurally defaulted, it lacks merit. The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner

fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Here, Petitioner fails to meet his difficult burden of demonstrating a due process violation. Petitioner has not shown that the trial court's failure to give the instruction on undisputed accomplice testimony infused the entire trial with unfairness. The Sixth Circuit has observed that "[n]either the United States Supreme Court nor this court has 'requir[ed] accomplice instructions as a general matter.'" *Young v. Trombley*, 435 F. App'x 499, 503 (6th Cir. 2011) (quoting *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000)). Although the trial court did not give the accomplice instruction at issue, it gave a cautionary instruction regarding accomplice testimony specifically referencing Miller's testimony, and Petitioner's trial counsel thoroughly cross-examined Miller regarding the benefit he would receive for testifying truthfully in Petitioner's trial. (ECF No. 10-7 at PageID.283.) Thus, the jury was well aware that Miller had a reason to testify favorably for the prosecution and that it should carefully weigh his testimony. *See Goff v. Bagley*, 601 F.3d 445, 469–70 (6th Cir. 2010) (concluding that the trial court's failure to give a specific accomplice instruction did not violate the petitioner's constitutional rights where the trial court's instruction regarding credibility of witnesses informed the jurors of relevant factors to consider when determining witness credibility); *Ward v. McKee*, No. 1:04-cv-364, 2007 WL 2710832, at *2 (W.D. Mich. Sept. 13, 2007) (holding that the trial court's failure to give an instruction on the unreliability of accomplice testimony did not result in an unfair trial where the trial court gave a cautionary instruction with respect to the accomplice's testimony).

Petitioner fails to show that the state appellate court's determination of the issue was contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to relief on this claim.

### D.        Ineffective Assistance of Counsel

Petitioner asserts in grounds IV, V, and VII that he was denied his Sixth Amendment right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123

(2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1.    Failure to Object to DeVries's Testimony and Failure to Request Accomplice Instruction

In ground IV, Petitioner claims that his trial counsel was ineffective for failing to object to Detective DeVries's testimony and for failing to request the standard undisputed accomplice testimony instruction. The court of appeals rejected the claim as follows:

> In order to obtain relief for ineffective assistance of counsel, a defendant must show that counsel' [sic] performance fell below an objective standard of reasonableness and that, but for counsel's error, a different result would have been reasonably probable. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). The Court must analyze the issue with a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance, and the standard requires that the defendant overcome the presumption that the challenged action or inaction might be considered sound trial strategy. *People v Leblanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

> Defendant first argues that defense counsel was ineffective for failing to request a standard jury instruction for an undisputed accomplice's testimony, M Crim JI 5.6. The jury instruction essentially informs the jury that it should be cautious in accepting the accomplice-witness's testimony, because the witness may not be credible due to his involvement in the case and potential benefits promised to him in return for testifying. Here, however, defense counsel cross-examined and recross-examined Miller. As discussed above, defense counsel essentially attacked Miller's credibility and suggested to the jury that, as an accomplice to the crime, and due to the benefits he was promised in return for testifying, his testimony should not be believed. Although it may have been better strategy to request the jury instruction, defendant has not shown that defense counsel's failure to do so fell below an objective standard of reasonableness.

> Even assuming that defense counsel's failure to request the jury instruction was error, the error was not prejudicial to defendant. As discussed above, defense counsel attacked Miller's credibility during cross-examination and recross-examination. Moreover, the trial court did give the following instruction:

>> You have heard testimony from a witness, Tavis Miller. That witness made made [sic] an agreement with the prosecutor about charges against him in exchange for his testimony at this trial. You

> are to consider this evidence only as it relates to his credibility, as it
> may tend to show the witness' bias or self interest.

The jury was aware of the potential credibility issues with Miller. It was aware that it should consider Miller's relationship to the crime, as well as the benefits he received in return for his testimony, when determining his credibility. Despite this knowledge, it appears that the jury still gave relatively strong weight to Miller's testimony. Defendant has not shown that, had defense counsel requested the additional jury instruction regarding accomplice testimony, the jury would have given less weight to Miller's testimony, and thus a different result would have been reasonably probable.

Defendant next argues that defense counsel's behavior fell below an objective standard of reasonableness because counsel did not object to Detective DeVries's testimony regarding defendant's location based on CDR analysis. We disagree. Indeed, even if defense counsel had objected to Detective DeVries's testimony, the court would have done an analysis under MRE 702, and defendant has simply not adequately demonstrated that such an analysis would have resulted in exclusion of the evidence. Therefore, defense counsel was not ineffective for failing to object to Detective DeVries's testimony.

(ECF No. 10-11 at PageID.373–74.)

Petitioner fails to show that the Michigan Court of Appeals' decision on this claim constituted an unreasonable application of *Strickland*. First, regarding counsel's failure to request the accomplice instruction, at a minimum, it is questionable whether counsel's failure to do so fell below an objective standard of reasonableness. Counsel extensively cross-examined Miller about his involvement in the incident and about the deal he had with the prosecutor for testifying at trial. (ECF No. 10-7 at PageiD.283.) In addition, during his closing argument, defense counsel thoroughly reviewed Miller's testimony, explained why it was not credible, told the jurors that the court would be instructing them to scrutinize Miller's testimony carefully because of his role as an accomplice, and pointed out the benefits that Miller was to receive in exchange for his testimony. (ECF No. 10-8 at PageID.341.) Thus, even in the absence of the accomplice instruction, counsel highlighted for the jury the issues with Miller's credibility. Moreover, even if counsel's performance was deficient, Petitioner fails to demonstrate prejudice because the trial court

19

informed the jurors that they should consider Miller's agreement with the prosecution as an issue affecting his credibility. Aside from speculating that the accomplice instruction could have made a difference in the outcome of the trial, Petitioner offers no reasonable basis to conclude that the jury would have weighed Miller's testimony differently had the accomplice instruction been given. *See Edwards v. Klee*, No. 2:17-CV-10357, 2018 WL 3594975, at *5 (E.D. Mich. July 26, 2018) (concluding that the lack of a jury instruction on accomplice testimony did not deny Petitioner the right to present a defense because counsel had the opportunity to cross-examine the witness about her involvement in the crime and her cooperation with the police, and the trial court properly instructed the jury on witness credibility, including consideration of promises and other factors affecting the witness's testimony).

As for the failure to object to Detective DeVries's testimony, Petitioner fails to show that the court of appeals' determination was unreasonable. As the court noted, had trial counsel objected to the testimony, the trial court would have conducted an analysis under Michigan Rule of Evidence 702, and Petitioner failed to show that that such analysis would lead to the exclusion of Detective DeVries's testimony. After Detective DeVries testified about his training and experience in cell phone record and cell phone tower analysis, the trial court recognized him as an expert in the area of forensic cell phone and record analysis. (ECF No. 10-7 at PageID.316–17.) On the whole, Detective DeVries's testimony was fairly limited. He testified that, from the CDR and other records, he was able to determine the cell tower to which Petitioner's calls around the time of the incident connected and that it was the tower closest to 68 Commerce. (*Id.* at PageID.317.) He further testified that Petitioner made calls following the incident that used the cell tower located near his girlfriend's house, which corroborated Miller's testimony that he and Petitioner went there after the shooting. (*Id.* at PageID.317–18.) This was information obtained

from Petitioner's cellular provider, and there is no indication that it was unreliable or inaccurate.

Detective DeVries testified that, in general, a cell signal will go to the closest tower with the

strongest signal, but that may not be true in times of heavy traffic when the call might be bumped

to another tower that might be further away. (*Id.* at PageID.318.) Moreover, Detective DeVries did

not testify that he was able to pinpoint Petitioner's cell phone to an exact location or that the data

he received allowed him to do this. Similar testimony has been recognized as sufficiently reliable

and admissible in other cases. *See People v. Thomas*, No. 326645, 2016 WL 3421403, at *3–4

(Mich. Ct. App. June 21, 2016) (per curiam). Petitioner himself cites several cases in which similar

testimony was admitted to show the approximate location of a device.[2] (ECF No. 14 at

PageID.770–71.)  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2.    Failure to Interview

In ground V, Petitioner claims that his trial counsel was ineffective for failing to interview

any of the prosecution's witnesses prior to trial. The court of appeals addressed this claim as

follows:

> When alleging ineffective assistance of counsel due to counsel's unpreparedness, a
> defendant must show prejudice resulting from the lack of preparation. *People v
> Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). The failure to interview
> witnesses does not alone establish inadequate preparation. *Id.* at 642. "It must be
> shown that the failure resulted in counsel's ignorance of valuable evidence which
> would have substantially benefited the accused." *Id.* Certain circumstances,
> including a complete denial of counsel or an entire failure to subject the
> prosecutor's case to meaningful adversarial testing, are so likely to prejudice the
> defendant that no showing of prejudice is required. *United States v Cronic*, 466 US
> 648, 659; 104 S Ct 2039; 80 LEd 2d 657 (1984); *People v Frazier*, 478 Mich 231,

---

[2] Petitioner cites *United States v. Evans*, 892 F. Supp. 2d 949 (N.D. Ill. 2012), in which the court
refused to allow testimony from the government's cell-site expert based on the "granulization"
theory because the theory was "wholly untested by the scientific community." *Id.* at 956. *Evans* is
irrelevant to the instant case as Detective DeVries did not use the "granulization theory" and did
not purport to opine that Petitioner's cell phone was at a specific location at the time the calls were
made. His testimony would have simply allowed the jury to infer that Petitioner's cell phone was
within the coverage area of the cell phone tower when the call was made.

243; 733 NW2d 713 (2007). However, "[t]he *Cronic* test applies when the attorney's failure is complete, while the [standard] test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich App at 244.

In this case, defendant alleges that counsel failed to subject the prosecution's case to meaningful adversarial testing. Defendant bases his allegation on the assertion that counsel failed to investigate and interview witnesses at a point or points in time, specifically, before trial. This does not amount to a complete failure in representation. Therefore, we find that counsel's performance should be reviewed under the typical standard.

Defendant asserts that counsel was ineffective by failing to investigate the case and interview witnesses. However, defendant has not provided any evidence to support his assertions. Moreover, defendant has failed to assert that counsel's alleged failing resulted in counsel's ignorance of any evidence. Counsel cross-examined almost every witness that the prosecution called. Counsel pointed out inconsistencies in testimonies, impeached witnesses' credibility, emphasized biases and motivations, and highlighted flaws in police investigations. Defendant has not shown that the outcome of the trial would have been different had counsel investigated or interviewed the witnesses before trial. Accordingly, we hold that counsel's alleged failure to investigate the case and interview witnesses before trial did not deprive defendant of his Sixth Amendment right to counsel or otherwise prejudice defendant.

(ECF No. 10-11 at PageID.375.)

Petitioner argues that his counsel's failure to interview witnesses resulted in a complete failure to subject the prosecution's case to meaningful adversarial testing, resulting in a complete denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). Petitioner thus argues that he need not demonstrate prejudice under *Strickland. See Cronic*, 466 U.S. at 659. However, the Supreme Court has clarified that the *Cronic* presumption applies only where defense counsel completely or entirely fails to oppose the prosecution's case, *Bell*, 535 U.S. at 697, and a review of the record belies Petitioner's claim that his counsel's performance was so deficient that it amounted to a complete failure to provide a defense. For example, at Petitioner's urging, counsel filed a motion to compel to obtain supplemental police reports and other evidence. (ECF No. 10-4.) In addition, counsel presented opening and closing arguments and demonstrated a sufficient

command of the evidence to effectively cross-examine the prosecution's witnesses. The court of appeals thus properly declined Petitioner's invitation to apply *Cronic* to this claim.

Petitioner fails to show that the court of appeals "applied *Strickland* to [the facts of] his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699. It is Petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993), and as was the case before the Michigan Court of Appeals, he provides this Court no evidence to support his assertions that counsel failed to investigate the case properly or interview the prosecution's witnesses prior to trial. More importantly, Petitioner fails to show how additional investigation or interviews of witnesses would have been beneficial to his defense or resulted in a different outcome. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (stating that "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material"). In light of Petitioner's failure to make this showing, he is not entitled to habeas relief on this claim.

### 3.    Failure to Object to Surprise Witness

In his third ineffective assistance of counsel claim, Petitioner argues that his trial counsel was ineffective for failing to object to the testimony of surprise witness Steve Schabel, an investigator for the Michigan Department of Corrections. Schabel testified that on November 25, 2014, he was involved in a high-risk stop of a vehicle in which Petitioner was a passenger and that after searching the back seat, he recovered the .40 caliber handgun that had been introduced at

trial. (ECF No. 10-7 at PageID.298–99.) The court of appeals rejected Petitioner's claim as follows:

> We do agree that counsel erred by not objecting to Schabel as a surprise witness. MCL 767.40a(3) states, "Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." Here, the prosecution did provide defendant with a list of potential witnesses. However, Schabel was not listed anywhere on that list. Therefore, counsel should have sought to exclude Schabel as a witness pursuant to MCL 767.40a(3). However, we do not agree that, absent counsel's failure, a different result was reasonably probable. Defendant argues that Schabel's testimony was the only evidence connecting defendant to the gun. However, at trial, Bailey testified that early in 2014 defendant hit her over the head with a black handgun. She stated that she would recognize the handgun again if she saw it. Bailey then identified the gun admitted into evidence as the gun that defendant used to hit her. Bailey, as a witness the prosecution identified it might call at trial, provided an independent basis for connecting defendant to the gun used to shoot the victim. Miller also connected defendant to the gun. Therefore, defendant has not met his burden of showing that counsel's error was prejudicial. *See Russell*, 297 Mich App at 715-716. Accordingly, defendant was not denied the effective assistance of counsel.

(ECF No. 10-11 at PageID.374–75.)

The court of appeals' rejection of this claim did not constitute an unreasonable application of *Strickland*. Assuming that counsel's failure to object to Schabel's testimony constituted deficient performance, Petitioner has failed to demonstrate prejudice. The prosecution called Schabel to connect Petitioner to the handgun that had been recovered during the November 25, 2014 stop and already been admitted into evidence. Schabel's testimony was important, but certainly not necessary to establish this connection, as Bailey's and Miller's testimonies both did so. Thus, even if counsel had objected to this testimony and the trial court had excluded it, the jury still had ample basis to find that Petitioner used the gun to shoot the victim. Petitioner thus failed to demonstrate "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Therefore, this ground lacks merit.

### E.    Failure to Instruct on Proper Burden of Proof

In ground VI, Petitioner argues that the trial court violated his right to due process when it instructed the jurors that they could find him guilty if they decided that the prosecutor had proven each of the elements of the respective crimes, without informing them that the prosecutor had to prove each element beyond a reasonable doubt. When the trial court inquired of counsel whether there were any objections to the instructions, and whether anything else needed to be placed on the record, defense counsel stated, "No, Your Honor." (ECF No. 10-8 at PageID.348–49.) Citing *People v. Carter*, 462 Mich. 206, 214 (2000), the court of appeals held that Petitioner had waived appellate review of the issue under Michigan law. Nonetheless, the court continued: "Regardless, our review of the record reveals that the trial court's later instructions did properly convey to the jury that the prosecutor had to prove each of the elements beyond a reasonable doubt." (ECF No. 10-11 at PageID.375–76.)

Respondent argues that this claim is procedurally defaulted. I agree. As set forth above, procedural default occurs where: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "adequate and independent" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991); *see also Wimbley v. Sherry*, No. 2:06-CV-265, 2009 WL 3644808, at *8 (W.D. Mich. Oct. 30, 2009) ("Further, even though the court of appeals applied a limited review of the claimed error to determine whether it affected the outcome, petitioner's failure to object is still considered a procedural default."). Because Petitioner

failed to object to the instructions at trial, the issue was not preserved. The court of appeals found that defense counsel's acceptance of the jury instructions constituted a waiver of the issue. *See Carter*, 462 Mich. at 215–16 (issues pertaining to the instructions were waived where defense counsel expressly approved the trial court's proposed jury instructions). In addition, the court of appeals—the last state court to render a reasoned opinion on the issue—enforced the procedural rule so as to bar the claim. Finally, the rule that an attorney waives appellate review of an issue by expressly approving a court's procedure constitutes an independent and adequate rule that does not rely on federal law. *See McKissic v. Birkett*, 200 F. App'x 463, 471 (6th Cir. 2006).

Petitioner does not argue that he can show cause and prejudice for the default. Petitioner also has not presented any new reliable evidence to support a claim of innocence to allow this Court to consider this claim in spite of his procedural default. *See Lundgren v. Mitchell*, 440 F.3d 754, 763–64 (6th Cir. 2006). Accordingly, this claim is procedurally defaulted, and the Court need not address the merits.

**F.    Judicial Bias**

In his final ground, Petitioner argues that the trial court demonstrated bias when it noted for the record that two witnesses identified Petitioner in court in response to the prosecutor's question. In the first instance, the witness, Tavis Miller, identified the shooter as the person wearing "[a] checkered shirt and black pants." When the prosecutor asked the trial judge to let the record reflect that Miller had identified Petitioner, the court said, "It may." (ECF No. 10-6 at PageID.278.) In the second instance, when the prosecutor asked Patricia Bailey whether she saw the person in court who hit her on the head with the gun, she said, "[h]e's wearing a gray shirt, black pants, sitting between the two defendant attorneys or whatever." At that point, the judge said, "Record may reflect that she's identified the defendant." (ECF No. 10-7 at PageID.296.)

The court of appeals rejected this claim as follows:

> Defendant lastly argues that the trial court invaded the province of the jury and pierced the veil of impartiality by ordering record confirmation of the witnesses' in-court identification of defendant. We disagree. In several instances, the trial court merely ordered that the record should reflect a particular witness's identification of defendant in court. Nothing in the court's conduct in this respect implicates judicial partiality. *See People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

(ECF No. 10-11 at PageID.376.)

This determination was neither contrary to, nor an unreasonable application of, clearly established law as set forth by the United States Supreme Court. The trial court was merely making a record of what had occurred. Petitioner does not argue that there was any question as to whom the witnesses were referring or that there was any ambiguity or confusion about the identification. In any event, as the court of appeals correctly observed, nothing in the trial court's record findings indicates that the trial judge did anything other than act as an impartial reporter of events that transpired in the courtroom. *See People v. Culberson*, No. 344075, 2021 WL 68786, at *12 (Mich. Ct. App. Jan. 7, 2021) ("By confirming for the record what occurs with nonverbal actions in a courtroom, such as an in-court identification, not only does the court thus ensure that the transcript will reflect the identification, it also offers the parties an opportunity to raise objections, or otherwise express doubts, if there is any question concerning whom the witness identified."). Accordingly, this claim lacks merit.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the Court deny Petitioner's habeas petition. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: April 19, 2021                                           /s/ Sally J. Berens
                                                               SALLY J. BERENS
                                                               U.S. Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).